ERIK C. CHRISTIANSEN (SBN 150787)
NATHAN D. THOMAS (SBN 234931)
ELIZABETH M. BUTLER (SBN 326901)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:   801.532.1234
Facsimile:   801.536.6111

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.D. and L.M., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MIT45, Inc.,<br><br>        Defendant. | Case No. 24cv00499-L-DEB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 20, 2024<br>Time: 10:30<br>Place: Courtroom 5B<br>Judge: M. James Lorenz<br><br>NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT<br><br>Complaint filed March 14, 2024 |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Defendant MIT45, Inc., hereby moves to dismiss the Complaint of Plaintiffs B.D. and L.M. for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A hearing has been set for May 20, 2024 at 10:30 before the Honorable M. James Lorenz, Courtroom 5B, Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101. The motion is based on the grounds set forth in the accompanying memorandum of points and authorities.

Dated: April 10, 2024.

Respectfully submitted,

*/s/ Nathan D. Thomas*
Erik C. Christiansen
Nathan D. Thomas
Christian A. Vanderhooft
PARSONS BEHLE & LATIMER
*Attorneys for Defendant*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................... 1

LEGAL STANDARD ............................................................................... 2

STATEMENT OF FACTS ........................................................................ 3

ARGUMENT ............................................................................................. 4

I.    Plaintiffs' Consumer Protection Claims Fail. ................................. 4

    A.    Plaintiffs have not pleaded an inadequate remedy at law and
        therefore cannot pursue equitable relief............................... 5

    B.    Plaintiffs have not identified any statements by Defendant that
        might deceive or mislead a reasonable consumer.................... 8

        1.    Defendant's packages do not contain any alleged
            misrepresentations. ................................................... 8

        2.    Defendant's website does not contain any alleged
            misrepresentations. ................................................. 10

    C.    Plaintiffs have not adequately alleged that defendant violated
        the UCL, CLRA, or FAL based on purported omissions. ................. 11

        1.    Defendant had no duty to disclose under the UCL, CLRA, or
            FAL. ...................................................................... 11

            a.    Plaintiffs have not alleged the LiMandri
                factors. ....................................................... 12

            b.    Plaintiffs have not alleged materiality and
                central function............................................. 14

            c.    Plaintiffs have not alleged an unreasonable
                safety hazard. ............................................... 15

        2.    Defendant has complied with any applicable duty to disclose. 18

        3.    Defendant's alleged omissions do not violate the unfairness
            prong of the UCL. ...................................................... 19

II.   Plaintiffs' Implied Warranty Claims Fail. .................................... 21

III.  Plaintiffs' Unjust Enrichment Claim Fails. .................................. 22

IV.   Plaintiffs' Fraud by Omission and Negligent Misrepresentation
    Claims Fail. ............................................................................ 23

CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Ahern v. Apple, Inc.*,
  411 F.Supp.3d 541 (N.D. Cal. 2019) ................................................................. 16

*Apodaca v. Whirlpool Corp.*,
  Case No. SACV 13-00725, 2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) .......... 15

*Arena Rest. & Lounge LLC v. So. Glazer's Wine & Spirits, LLC*,
  Case No. 17-CV-03805, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ............. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662, (2009) ............................................................................................ 2

*Balistreri v. McCormick & Co., Inc.*,
  No. 5:22-CV-00349-EJD, 2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) .......... 18

*Baranco v. Ford Motor Co.*,
  294 F. Supp. 3d 950 (N.D. Cal. 2018) ............................................................... 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 2

*Brown v. Madison Reed, Inc.*,
  622 F.Supp.3d 786 (N.D. Cal. 2022) ................................................................. 18

*Browning v. Unilever United States, Inc.*,
  Case No. SACV 16-02210, 2018 WL 6615064 (C.D. Cal. Dec. 17, 2018) ........ 17

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ................................................................................... 2

*Cheramie v. HBB, LLC*,
  545 F. App'x 626 (9th Cir. 2013) ....................................................................... 23

*Clevenger v. Welch Foods, Inc.*,
  Case No. SACV 20-01859, 2022 WL 18228288 (C.D. Cal. Dec. 14, 2022) .... 5, 6

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ............................................................................ 20

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ................................................................................. 9

-iv-

*Ehrlich v. BMW of N. Am., LLC*,
    801 F.Supp.2d 908 (C.D. Cal. 2010) ....................................................15

*Epperson v. Gen. Motors, LLC*,
    No. 3:23-CV-01554, 2023 WL 8628327 (S.D. Cal. Dec. 13, 2023) ..................19

*Gitson v. Trader Joe's Company*,
    Case No. 13-cv-01333, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ................10

*Grausz v. Hershey Co.*,
    Case No. 23-cv-00028, 2024 WL 312688 (S.D. Cal. Jan. 25, 2024) ..........passim

*Guzman v. Polaris Indus., Inc.*,
    49 F.4th 1308 (9th Cir. 2022)..................................................................6

*Hammerling v. Google LLC*,
    615 F.Supp.3d 1069 (N.D. Cal. 2022) ........................................... 12, 14

*Hendricks v. StarKist Co.*,
    30 F.Supp.3d 917 (N.D. Cal. 2014) .........................................................22

*Herremans v. BMW of N. Am., LLC*, Case No.,
    CV 14–02363, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) .............................15

*Herron v. Best Buy Co. Inc.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)...............................................13, 14

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018)..........................................................passim

*In re Plum Baby Food Litig.*,
    Case No. 4:21-cv-00913, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024)16, 19, 21

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F.Supp.3d 1067 (N.D. Cal. 2021) ............................................. 12, 15

*In re Trader Joe's Co. Dark Chocolate Litig.*,
    Case No. 3-23-cv-0061, 2024 WL 1319725 (S.D. Cal. Mar. 27, 2024)........16, 18

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116, 103 Cal.Rptr.3d 83 (Cal Ct. App. 2009) .........................5

*Johnson v. Glock, Inc.*,
    Case No. 3:20-cv-08807, 2021 WL 428635 (N.D. Cal. Feb. 8, 2021) ...............16

MOTION TO DISMISS & MEMO OF P's & A's IN
SUPPORT

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326, 60 Cal.Rptr.2d 539 (1997)................................12, 13, 14, 23

*Miller v. Ford Motor Co.*,
   620 F. Supp. 3d 1045 (E.D. Cal. 2022)...............................................................15

*Moore v. Mars Petcare US, Inc.,*
   966 F.3d 1007 (9th Cir. 2020).........................................................................8, 10

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021)...................................................................................8

*Nevada Fleet LLC v. FedEx Corp.*,
   Case No. 17-cv-01732, 2024 WL 199626 (E.D. Cal. Jan. 18, 2024) ...........23, 24

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998).................................................................................3

*Regents of Univ. of Cal. v. LTI Flexible Prods., Inc.*, Case,
   No. 3:20-cv-08686, 2021 WL 4133869 (N.D. Cal. Sept. 10, 2021)....................23

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987)...............................................................................3

*Rodriguez v. Mondelez Global LLC*,
   Case No. 23-cv-00057, 2023 WL 8115773 (S.D. Cal. Nov. 22, 2023)...............17

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................................15

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)............................................................................5, 6

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)...............................................................................2

*Stewart v. Kodiak Cakes, LLC*,
   537 F.Supp.3d 1103 (S.D. Cal. 2021) ...................................................................2

*Sugawara v. Pepsico, Inc.*,
   Case No. 2:08-cv-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009)............22

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007).................................................................................2

-vi-

*Torres v. Botanic Tonics, LLC*,
   Case No. 23-cv-01460, 2023 WL 8852754 (N.D. Cal. Dec. 21, 2023)..............24

*Wallace v. SharkNinja Operating, LLC*,
   Case No. 18-cv-05221, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) ...............16

*Zapata Fonseca v. Goya Foods Inc.*,
   No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .............22

**Statutes**

Cal. Com. Code § 2314 ...............................................................................................21

Cal. Com. Code § 2314(2)(a) .....................................................................................21

Cal. Com. Code § 2314(2)(e)–(f) ...............................................................................21

§2314(2)(a), (e), or (f) ................................................................................................21

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................2

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...............................................ii

**Other Authorities**

U.C.C.§§ 2-313(2)(a), (e), (f) .....................................................................................21

UCC § 2-314...............................................................................................................21

MOTION TO DISMISS & MEMO OF P's & A's IN
SUPPORT

Case No. 24cv00499-L-DEB
4867-0883-9346.v8

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant MIT45, Inc., manufactures and sells products derived from the leaves of the kratom plant. Plaintiffs B.D. and L.M., like millions of other Americans, have allegedly purchased and used kratom products, including Defendant's products. Plaintiffs eventually became dissatisfied with kratom, and now seek to shoehorn vague and ambiguous allegations relating to the addictiveness of kratom into the framework of California's consumer protection laws. In doing so, Plaintiffs propose stretching such laws well beyond their intended scope in order to impose novel disclosure obligations onto Defendant. The Court should reject these efforts.

As an initial matter, Plaintiffs are improperly seeking equitable relief without first pleading that they lack a remedy at law. Their consumer protection claims and unjust enrichment claim are therefore subject to dismissal. Plaintiffs also suggest that Defendant's product packaging and website are misleading and deceptive without identifying any specific statements on the packages or website that are inaccurate or untrue. More troublingly, Plaintiffs ignore the express warnings and disclaimers included by Defendant on the packages and website. This omission is fatal to Plaintiffs' consumer protection claims based on allegations of affirmative misrepresentations.

The bulk of Plaintiffs' allegations, however, do not relate to any affirmative misrepresentations made by Defendant, but to an alleged omission: Plaintiffs assert that Defendant had a legal obligation to label its products as addictive. Plaintiffs argue that this alleged omission violates California consumer protection laws, is a breach of the implied warranty of merchantability, constitutes common-law fraud and negligent misrepresentation, and has resulted in unjust enrichment. But no such duty exists under Plaintiffs' pleaded facts and legal theories. And even if such

1  a duty did exist, Defendant fulfilled it through its existing warnings and
2  disclaimers. This is all apparent from Plaintiffs' pleading on its face.

3      Accordingly, because Plaintiffs have failed to adequately plead that failure
4  to label Defendant's products as addictive violates California law, Defendant
5  respectfully requests that the Court grant the instant Motion to Dismiss in its
6  entirety.

7                              **LEGAL STANDARD**

8      At the pleading stage, a plaintiff must plead "enough facts to state a claim to
9  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
10 (2007). This standard demands more than "a formulaic recitation of the elements of
11 a cause of action" or "naked assertions devoid of further factual enhancement."
12 *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotations omitted). Instead,
13 the complaint "must contain allegations of underlying facts sufficient to give fair
14 notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*,
15 652 F.3d 1202, 1216 (9th Cir. 2011).

16     Additionally, where a plaintiff's claims sound in fraud, the allegations must
17 be pled with particularity. *See* Fed. R. Civ. P. 9(b). At a minimum, this requires
18 "an account of the time, place, and specific content of the false representations" at
19 issue. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotations
20 omitted). That is, a plaintiff must plead the "the who, what, when, where, and how
21 of the misconduct charged." *Stewart v. Kodiak Cakes, LLC*, 537 F.Supp.3d 1103,
22 1129 (S.D. Cal. 2021) (internal quotations omitted). This particularity requirement
23 applies not only to common-law fraud and negligent misrepresentation claims, but
24 also to claims under California's consumer protection laws when such claims are
25 based in fraud. *See id.* at 1131–32.

26     At the pleading stage, "[a]ll allegations of material fact are taken as true and
27 construed in the light most favorable to the nonmoving party." *Cahill v. Liberty*
28 *Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). But a court need not take legal

MOTION TO DISMISS & MEMO OF P's & A's IN
SUPPORT

conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**STATEMENT OF FACTS**[1]

Kratom products are derived from the mitragyna speciosa, a tropical tree native to Southeast Asia. See Complaint [Dkt No. 1] ("Compl.") ¶ 12. According to Plaintiffs' allegations, kratom has been in use for hundreds of years, and is appealing because of its "variable but not debilitating effects." Id. at ¶¶ 12–13, 19. Additionally, Kratom may operate as a painkiller in sufficient doses; has "mood-lifting and stimulant-like effects;" may "alleviate[] opioid withdrawal symptoms;" and currently has between "11 million and 15 million annual users in the United States." Id. at ¶¶ 18–20, 26, 33. Plaintiffs admit that the precise effects of kratom are "highly dose-dependent." Id. at ¶ 18.

In addition to acknowledging the foregoing uses and effects, Plaintiffs allege that "kratom is highly addictive and has the potential to cause physical and psychological dependence in regular users," and that "there are widespread user reports and case studies of addiction and dependency issues." Id. at ¶¶ 59–60. As an example of such widespread reports, Plaintiffs allege that some 41,000 people are members of an online forum that discusses kratom addiction. See id. at ¶ 40.

Defendant manufactures and sells a line of kratom products. See id. at ¶ 47. Plaintiffs are both citizens of California who allegedly became addicted to Defendant's products. Plaintiff B.D. resides in San Diego and began using kratom sometime in 2021 at the recommendation of a "smokeshop owner" as a treatment for his alcohol addiction and his intense anxiety. See id. at ¶ 81. B.D. alleges that

---

[1] These facts are drawn from Plaintiffs' Complaint and are accepted as true solely for purposes of this Motion. Defendant reserves the right to dispute the facts as pleaded at the appropriate time.

1  he "realized he was addicted to kratom in February 2022" and "[t]hough [he]

2  wanted to stop, he could not." Id. at ¶ 82. Plaintiff L.M resides in Oroville and

3  allegedly first purchased Defendant's products in September 2022 after hearing

4  about them "through a friend who told him it would help alleviate withdrawal from

5  other substances without being addictive itself." Id. at ¶ 84. Plaintiff L.M. alleges

6  that he "realized he was truly addicted to kratom in May 2023" and "[t]hough [he]

7  wanted to stop, he could not." Id. at ¶ 85.

8       Plaintiffs commenced litigation against Defendant on their own behalf and

9  as proposed representatives of both a nationwide class and a California subclass of

10  individuals who have used Defendant's products. The gravamen of Plaintiffs' suit

11  is that Defendant either affirmatively misrepresented or failed to disclose on its

12  product packages and its website that kratom is addictive. See, e.g., id. at ¶¶ 102,

13  113, 125, 133, 143, 153, 163. Based on these allegations, Plaintiffs assert claims

14  for violation of California's Unfair Competition Law ("UCL"), Consumers Legal

15  Remedies Act ("CLRA"), and False Advertising Law ("FAL"), as well as claims

16  for breach of the implied warranty of merchantability, unjust enrichment, fraud by

17  omission, and negligent misrepresentation.

18  **ARGUMENT**

19  **I.   PLAINTIFFS' CONSUMER PROTECTION CLAIMS FAIL.**

20       Plaintiffs' first three claims, for violations of the UCL, CLRA, and FAL,

21  respectively,  fail on three grounds, each of which is sufficient to warrant dismissal

22  on its own.[2] First, the equitable relief sought by these claims is prohibited because

23  Plaintiffs failed to first plead that monetary damages are insufficient to remedy

24  their alleged harms. Second, to the extent these claims are based on alleged

25  affirmative  misrepresentations,  none  of  the  statements  that  Plaintiffs  identify

26  _____

27  [2] Because these allegations overlap significantly, Defendant addresses the claims together. *See Grausz v. Hershey Co.*, Case No. 23-cv-00028, 2024 WL 312688 at

28  *3 (S.D. Cal. Jan. 25, 2024) ("Because the omissions theories of liability for the CLRA, FAL, and UCL claims overlap, the Court considers them in tandem.").

MOTION TO DISMISS & MEMO OF P's & A's IN SUPPORT

would mislead or deceive a reasonable consumer. Finally, to the extent Plaintiffs'
claims are based on alleged omissions, such claims fail because Defendant had no
duty to disclose additional information relating to its products and, in any event,
included sufficient disclaimers on its products.

**A.** **Plaintiffs have not pleaded an inadequate remedy at law and
therefore cannot pursue equitable relief.**

To the extent each of Plaintiffs claims under the UCL, CLRA, and FAL seek
equitable relief, they are inadequately pleaded to justify the relief sought in federal
court.

> Unlike state courts, federal courts have equitable jurisdiction to
> award equitable relief only where a plaintiff has no adequate legal
> remedy based on the same harm. Thus, where monetary damages
> provide an adequate remedy, a federal court may not consider the
> merits of equitable claims for restitution, disgorgement, or injunctive
> relief.

*Grausz v. Hershey Co.,* No. 23-CV-00028-AJB-SBC, 2024 WL 312688, at *7
(S.D. Cal. Jan. 25, 2024) (internal quotations omitted); *see also Sonner v. Premier
Nutrition Corp.*, 971 F.3d 834, 841–44 (9th Cir. 2020) (affirming dismissal of UCL
and CLRA equitable claims, where CLRA damages claim provided an adequate
remedy at law). Thus, to seek equitable relief, "the complaint must allege that the
plaintiff lacks an adequate legal remedy. . . . To do this, courts generally require
plaintiffs seeking equitable relief to allege some facts suggesting that damages are
insufficient to make them whole." *Clevenger v. Welch Foods, Inc.*, Case No.
SACV 20-01859, at *4 (C.D. Cal. Dec. 14, 2022) (internal quotations omitted).

Here, Plaintiffs' UCL and FAL claims exclusively seek equitable relief,
namely restitution. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130, 103
Cal.Rptr.3d 83 (Cal Ct. App. 2009) ("The remedies available in a UCL or FAL
action are limited to injunctive relief and restitution"). Plaintiffs' CLRA claim, by
contrast, seeks both equitable relief (in the form of an injunction) and monetary
damages. *See* Compl. ¶¶ 117–18. Plaintiffs are therefore required to "allege some
facts suggesting that damages are insufficient to make them whole," *Clevenger*,

MOTION TO DISMISS & MEMO OF P's & A's IN
SUPPORT

2022 WL 18228288 at *4, before bringing these equitable claims. Plaintiffs have not done so.

Instead, Plaintiffs have made allegations that are identical to those rejected by the court in *Grausz*. In that case, the plaintiff brought UCL, FAL, and CLRA claims based on an alleged failure by the Hershey Company to disclose trace levels of heavy metals in its chocolate bars. The plaintiff justified her requests for equitable relief by summarily alleging that she "may lack an adequate remedy at law, if for instance, damages resulting from their purchase of the Products is determined to be in an amount less than the premium price of the Products." *Grausz*, 2024 WL 312688 at *7. The court held this was insufficient because "Plaintiff's allegations do not show how restitution would go beyond the damages available to her. Plaintiff fails to allege any specific facts showing that damages are inadequate or incomplete." *Id.* (internal quotations omitted).

The Complaint here contains the exact same language as the *Grausz* complaint: "[E]quitable relief is appropriate because Plaintiffs may lack an adequate remedy at law, if for instance, damages resulting from their purchase of the Products is determined to be in an amount less than the premium price of the Product." Compl. ¶ 106. And here, too, the Court should conclude this is insufficient because Plaintiffs have not alleged any facts suggesting that their alleged harms would not be remedied through monetary damages. On this basis, the Court should dismiss Plaintiffs' UCL and FAL claims.[3]

---

[3] That Defendant, by this Motion, seeks to dismiss *all* of Plaintiffs' claims—including their claims at law—does not alter the foregoing analysis. The inadequate-remedy-at-law pleading requirement turns "on the relief that could possibly be afforded under a claim, as opposed to possible hurdles the plaintiff might face in achieving that relief." *Clevenger*, 2022 WL 18228288 at *5; *see also Sonner*, 971 F.3d at 844 (dismissal of UCL and CLRA equitable claims on the ground that a CLRA damages claim provided an adequate remedy at law was proper, even though that CLRA damages claim had already been dismissed); *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (dismissal of the UCL equitable claim proper because "[plaintiff] had an adequate remedy at law through his CLRA claim for damages, even though he could no longer pursue it" due to a statute of limitations).

The Court should likewise dismiss Plaintiffs' requests for equitable relief—namely an injunction—under the CLRA. In *Grausz*, notwithstanding the dismissal of claims seeking restitution, the court allowed the plaintiff's request for injunctive relief to go forward because such relief was "premised on alleged future harm." *Grausz*, 2024 WL 312688 at \*8. Unlike damages for past harm, the court concluded that the plaintiff had "sufficiently pled the likelihood of future harm for which she has no adequate remedy at law" because she "wish[ed] to purchase the Products in the future" but could not do so absent an injunction protecting her from the alleged presence of heavy metals in the chocolate. *Id.* at \*\*1, 8.

Here, Plaintiff B.D. alleges that he "realized he was addicted to kratom in February 2022" and "[t]hough [he] wanted to stop, he could not," while Plaintiff L.M. alleges that he "realized he was truly addicted to kratom in May 2023" and "[t]hough [he] wanted to stop, he could not." *See* Compl. ¶¶ 82, 85. Thus, the injunctive relief that Plaintiffs seek—court-ordered warnings that Defendant's kratom products are addictive—would not have any impact on Plaintiffs' future purchases. That is, Plaintiffs' will either cease purchasing Defendant's products because they view them as dangerous or continue purchasing Defendant's products because of their alleged addiction. Labeling will not change the outcome for the Plaintiffs. This situation is therefore entirely unlike a chocolate lover who has ceased purchasing chocolate but will resume doing so once a new label—compelled by an injunction—details the amount of metal in each chocolate bar. In sum, because there is no distinction here between the damages available for past harm and the future harm to be addressed by a hypothetical injunction, Plaintiffs' CLRA claim, like the UCL and FAL claims, should be dismissed to the extent it seeks equitable relief.

**B.** <u>**Plaintiffs have not identified any statements by Defendant that might deceive or mislead a reasonable consumer.**</u>

Plaintiffs assert, as part of their UCL, FAL, and CRLA claims, that Defendant is liable for making affirmative misrepresentations about its products. *See* Compl. ¶¶ 102, 113, 125. Because these allegations are insufficient as a matter of law, this provides a separate and independent basis to dismiss the UCL, FAL, and CRLA claims.

To state a claim under California's consumer protection statutes based on alleged misrepresentations, Plaintiffs must ultimately show – and at this state plead facts that would show – that "members of the public are likely to be deceived." *Moore v. Mars Petcare US, Inc.* ("*Mars Petcare*"), 966 F.3d 1007, 1017 (9th Cir. 2020) (internal quotations omitted).

> This is not a negligible burden. To meet this standard, Plaintiffs must demonstrate more than a mere possibility that the seller's label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner . . . rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled. Indeed, a plaintiff's unreasonable assumptions about a product's label will not suffice.

*Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (internal quotations omitted).

**1.    Defendant's packages do not contain any alleged misrepresentations.**

Plaintiffs first assert that the packaging for Defendant's products is misleading. In support of this argument, the Complaint includes two images of Defendant's packaging. *See* Compl. ¶¶ 64, 66. Plaintiffs complain that the packaging is "woefully sparse," includes "minimal disclosures or warnings," is "innocuous," and is "printed in clear, bold text, implying a 'no frills' Product." *Id.* at ¶¶ 64–68. But Plaintiffs fail to make *any allegation* that even a single statement on the packaging is untrue. Plaintiffs never allege, for example, that the products contain other, undisclosed ingredients; that the milligram amounts included are

-8-

MOTION TO DISMISS & MEMO OF P's & A's IN SUPPORT

inaccurate; or that the alkaloid content is false. On their face, Defendant's packages are not misleading or deceptive to a reasonable consumer because no falsity in the provided information is alleged..

The case of *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) is instructive. In that action, a product's package disclosed the amount of lip balm in a tube dispenser, but a plaintiff complained that such information was misleading because the last 25% of the product was difficult to access (i.e., a consumer had to use "a finger or small tool" to scrape the last of the balm out of the tube, rather than be able to apply the lip balm directly by twisting the tube to cause the balm to emerge from the top). *Id.* at 966. The Ninth Circuit affirmed dismissal of this claim under the reasonable consumer test:

> Apart from the accurate weight label, there are no other words, pictures, or diagrams adorning the packaging . . . from which *any* inference could be drawn or on which any reasonable belief could be based about how much of the total lip product can be accessed by using the screw mechanism. In the absence of any statement or other depiction anywhere on the package about lip product accessibility, we conclude that it is not plausible that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled into thinking the entire lip bullet will clear the tube's opening.

*Id.* (emphasis in original) (internal quotations omitted).

Defendant's labeling at issue here is similar. Certain information about the contents of the bottle or tablets are disclosed, and that information—as far as the Complaint reveals—is entirely accurate. Nothing else on the packaging would allow '*any* inference' to be drawn relating to the characteristics of the product, and the packaging therefore is not misleading.

Here, Defendant's position is even stronger than the defendant in *Ebner* because its packages also explicitly warn (1) that the label has not been reviewed by the FDA; (2) that kratom should not be used to diagnose, treat, cure, or prevent any disease; and (3) that the FDA "has not yet approved this product for human consumption." *See* Compl. ¶¶ 64, 66. Other than dismissing such language as a

"bog-standard disclaimer," *see id.* at ¶ 65, Plaintiffs in no way evaluate the significance of this language. But California courts have long recognized that "qualifiers in packaging, usually on the back of a label or in ingredient lists, can ameliorate any tendency of the label to mislead." *Mars Petcare*, 966 F.3d at 1017 (internal quotations omitted); *see also Gitson v. Trader Joe's Company*, Case No. 13-cv-01333, 2013 WL 5513711 at *7 (N.D. Cal. Oct. 4, 2013) (no confusion by reasonable consumers where "the allegedly misleading term is coupled with the explicit disclaimer on the product label"). Accordingly, considering both the lack of any untrue statements and the use of explicit disclaimers, Plaintiffs have failed to adequately plead that Defendant's product packages are misleading or deceptive.

### 2.   Defendant's website does not contain any alleged misrepresentations.

Plaintiffs' allegations of misrepresentations on Defendant's website fare no better. Plaintiffs allege:

> Defendant's website is sparse as well, with most of the text on each Product page dedicated to extolling either the Product's potency or "energetic" effects when consumed. The only representations that Defendant makes about the properties of its Products are that they are "natural" made with "botanical" ingredients and an emphasis on the "purity" of the Products.

Compl. ¶ 70. Again, Plaintiffs never allege that any of these statements are untrue.

Plaintiffs never challenge that Defendant's products are potent or cause energetic effects; never dispute that Defendant's products are natural and distilled from plants; and never allege that Defendant's products are somehow impure or contaminated. Rather, Plaintiffs again ignore, without explanation, the Defendant's website's express disclosure that "the FDA has 'warned against the dangers of consuming kratom and [how] there are no safe guidelines for use as a dietary supplement[.]'" *Id.* at ¶ 49. Accordingly, just as with its product packaging, the Complaint alleges only that Defendant's website contains true statements and appropriate warnings consistent with Plaintiffs' perceptions of the danger of such products. Plaintiffs' UCL, CLRA, and FAL causes of action must therefore be

dismissed insofar as they are based on allegations of deceptive or misleading statements on Defendant's packages or website.

### C. **Plaintiffs have not adequately alleged that defendant violated the UCL, CLRA, or FAL based on purported omissions.**

The bulk of Plaintiffs' Complaint focuses not on affirmative misstatements but on an alleged failure to disclose that kratom is addictive. *See* Compl. ¶¶ 102, 113, 125.[4] These allegations do not give rise to liability for two reasons: (1) Defendant had no duty to disclose any additional information about its products, and (2) even assuming there was such a duty, Defendant's warnings and disclaimers satisfied that duty.

#### 1. **Defendant had no duty to disclose under the UCL, CLRA, or FAL.**

"Omissions may be the basis of claims under California consumer protections laws, but to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose." *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018) (internal quotations omitted). After all, violations of these laws are "determined by asking whether a reasonable consumer would likely be deceived . . . [and] a failure to disclose a fact one has no affirmative duty to disclose is not likely to deceive anyone." *Id.* at 867–68 (internal quotations omitted).

Here, there is no allegation that Defendant has affirmatively represented that kratom is *not* addictive on its website or its packaging, so the omissions are not contrary to any representations made by Defendant.[5] Plaintiffs' claims may therefore proceed only if Defendant had a duty to disclose.

---

[4] Defendant disagrees with Plaintiffs' allegations relating to the alleged dangers of kratom but accepts them as true for purposes of this Motion only.

[5] Indeed, Plaintiffs allege that it was a "smokeshop owner" and a "friend," not Defendant, that originally recommended the use of kratom to treat their alcoholism, anxiety, and withdrawal symptoms, even though Defendant's products expressly warn they are "not intended to diagnose, treat, cure, or prevent any disease." *See* Compl. ¶¶ 64, 66, 81, 84.

"Caselaw on the scope of a defendant's duty to disclose in omission-based consumer protection cases is marked by general disarray." *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.Supp.3d 1067, 1101 (N.D. Cal. 2021). Nevertheless, in *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 60 Cal.Rptr.2d 539 (1997), the California court of appeals stated:

> There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*Id.* at 336, 60 Cal.Rptr.2d 539 (internal quotation omitted). This passage is sometimes taken to delineate the full range of scenarios in which a seller's duty to disclose arises. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.Supp.3d 1067, 1101.While some courts address only these *LiMandri* factors, other courts have subsequently held that, "in addition to alleging a *LiMandri* factor, the plaintiff must allege materiality and that the defect was central to the product's function." *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1085 (N.D. Cal. 2022). Finally, some courts have held that "sellers also have a duty to disclose physical product defects in pure-omission cases where those defects create a safety hazard[.]" *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.Supp.3d at 1101. Defendant addresses each of these tests in turn.[6]

### a.    *Plaintiffs have not alleged the LiMandri factors.*

The first factor in *LiMandri* asks whether there is a fiduciary relationship between Defendant and Plaintiffs. *See LiMandri*, 52 Cal. App. 4th at 336. No such relationship exists here, and Plaintiffs have not alleged otherwise. *See Arena Rest. & Lounge LLC v. So. Glazer's Wine & Spirits, LLC*, Case No. 17-CV-03805, 2018

---

[6] *Hodsdon* applied these duty-to-disclose tests to the CLRA, the FAL, and the unlawful and fraudulent prongs of the UCL, while noting that different tests might apply to the unfair prong of the UCL. *See Hodsdon*, 891 F.3d at 865–66, 68. Defendant here likewise addresses unfairness separately in Section I(C)(3) below.

WL 1805516 at *12 (N.D. Cal. Apr. 16, 2018) ("California law is clear that an arm's length commercial transaction does not give rise to a fiduciary relationship.").

The second *LiMandri* factor requires that Defendant had exclusive knowledge of material facts not known to the Plaintiffs. *See LiMandri*, 52 Cal. App. 4th at 336. "A defendant has exclusive knowledge giving rise to a duty to disclose when according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Herron v. Best Buy Co. Inc*., 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (internal quotations omitted). The nature of the defect, as alleged in the Complaint, is the addictive nature of kratom. But according to Plaintiffs, this alleged defect is not difficult to discover: "It has been known for decades in the English-speaking world that kratom is highly addictive and has the potential to cause physical and psychological dependence in regular users." Compl. ¶ 60. Indeed, by Plaintiffs' own admission, "there are widespread user reports and case studies of addiction and dependency issues." *Id.* at ¶ 59. And some 41,000 people are allegedly members of an online forum discussing kratom addiction. *See id.* ¶ 40. These allegations flatly negate any notion that Defendant possessed "exclusive knowledge" giving rise to a duty to disclose.

The third *LiMandri* factor asks whether Defendant has actively concealed a material fact. *See LiMandri*, 52 Cal. App. 4th at 336. "[T]o state a claim for active concealment, Plaintiff must allege specific affirmative acts on the part of the Defendants in hiding, concealing or covering up the matters complained of." *Herron,* 924 F. Supp. 2d at 1176 (internal quotations omitted). Again, according to Plaintiffs, the alleged potentially negative side effects of kratom are well known. *See* Compl. ¶¶ 13, 40, 59–60. It is therefore unsurprising that Plaintiffs make no specific allegations that Defendant affirmatively hid, concealed, or covered up any information relating to kratom's effects.

MOTION TO DISMISS & MEMO OF P's & A's IN SUPPORT

Finally, the fourth *LiMandri* factor applies "when the defendant makes partial representations but also suppresses some material facts." *LiMandri*, 52 Cal. App. 4th at 336. A partial representation claim may arise when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Herron,* 924 F. Supp. 2d at 1177. Thus, a defendant may not "suppress or conceal any facts within his knowledge which materially qualify those stated." *Id.* (citations omitted). Here, as described in Section I(B) above, Defendant's packages and website consisted exclusively of truthful statements and consumer warnings. Defendant did not make any partial representations. As Plaintiffs make plain, any partial representations originated not from the Defendant but from a "smokeshop owner" and a "friend." *See* Compl. ¶¶ 81, 84.

### b. *Plaintiffs have not alleged materiality and central function.*

To determine whether a material defect is central to the product's function, "[t]he question is not whether a defect affects the product, rather the question is: does the alleged defect prevent the product from performing a critical or integral function, or render the product incapable of use for all users?" *Hammerling*, 615 F.Supp.3d at 1086 (internal quotations omitted).[7]

The Complaint forecloses any finding that the alleged defect—addictiveness—prevents the product from performing a "critical or integral function" or being "incapable of use" for "all users." *Hammerling*, 615 F.Supp.3d at 1086. According to the Plaintiffs, kratom has been in use for hundreds of years; is appealing because of its "variable but not debilitating effects;" may operate as a painkiller in sufficient doses; has "mood-lifting and stimulant-like effects;" may

---

[7] As noted above, some courts, like *Hammerling*, hold that a plaintiff must allege *both* one of the *LiMandri* factors *and* that a defect is material and central to the product's functioning, while other courts address just the *LiMandri* factors. *See Hammerling*, 615 F.Supp.3d at 1085 (collecting cases).

-14-

"alleviate[] opioid withdrawal symptoms;" and currently has between "11 million and 15 million annual users in the United States." *See* Compl. ¶¶ 12–13, 18–20, 26, 33. Clearly, if millions of individuals are actively using kratom products, it is not "incapable of use."

This is particularly true given Plaintiffs' explicit acknowledgement that they are not typical consumers of kratom. Both B.D. and L.M. had histories of being addicted to other substances. *See* Compl. ¶¶ 81, 84. Plaintiffs do not allege that "all users," including those without histories of addiction, are incapable of using Defendant's products. In *Hodsdon*, for example, the plaintiff argued the use of slave or child labor in the manufacture of chocolate rendered the product inherently defective. The Ninth Circuit disagreed: "A computer chip that corrupts the hard drive, or a laptop screen that goes dark, renders those products incapable of use by any consumer; some consumers of chocolate are not concerned about the labor practices used to manufacture the product." *Hodsdon*, 891 F.3d at 864. The same conclusion applies here.

### c.    *Plaintiffs have not alleged an unreasonable safety hazard.*

Some courts have held that a seller has a duty to disclose defects that create an "unreasonable safety hazard." *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.Supp.3d at 1101. The application of this test to the instant context is uncertain; the vast majority of cases applying the unreasonable safety hazard test relate to motor vehicle defects.[8] Other examples include dishwashers that catch fire,[9]

---

[8] *See, e.g., Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1070 (E.D. Cal. 2022); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 870 (N.D. Cal. 2018); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 965–966 (N.D. Cal. 2018); *Ehrlich v. BMW of N. Am., LLC*, 801 F.Supp.2d 908, 918 (C.D. Cal. 2010); *Herremans v. BMW of N. Am., LLC*, Case No. CV 14–02363, 2014 WL 5017843, at *15 (C.D. Cal. Oct. 3, 2014).

[9] *Apodaca v. Whirlpool Corp.*, Case No. SACV 13-00725, 2013 WL 6477821 (C.D. Cal. Nov. 8, 2013).

blenders with a heightened risk of lacerations,[10] and guns that explode.[11] Unsurprisingly, given the context in which this test arose, there is a dearth of case law interpreting this unreasonable safety hazard standard in any manner applicable to the facts alleged here. *See, e.g.*, *Ahern v. Apple, Inc.*, 411 F.Supp.3d 541, 568 (N.D. Cal. 2019) ("[T]he case law suggests that an event only rises to the level of an 'unreasonable safety hazard' in dangerous situations analogous to engine disintegration or failure or engine fire; a faulty speedometer easily leading to traveling at unsafe speeds and moving violation penalties; or moisture on the wiring causing overheating and leading to a fire[.]") (internal quotations omitted).

In recent years, a handful of cases have attempted to apply the unreasonable safety hazard test to foods. In such cases, a plaintiff typically alleges–to minimal avail–either that a defendant failed to disclose that its foods contained carcinogens or that its food contained trace amounts of metals. Instead, courts considering the issue regularly grant motions to dismiss on the ground that such alleged harms are insufficient to satisfy the unreasonable safety hazard test. *See, e.g.*, *In re Plum Baby Food Litig.*, Case No. 4:21-cv-00913, 2024 WL 1354447 at *5 (N.D. Cal. Mar. 28, 2024) (allegation that baby foods contained "arsenic, cadmium, lead, mercury, and/or perchlorate" did not satisfy unreasonable safety hazard where "the theory that regular consumption of defendant's Baby Food over a period of time may lead to potentially dangerous accumulations of these chemicals is simply too conjectural"); *In re Trader Joe's Co. Dark Chocolate Litig.*, Case No. 3-23-cv-0061, 2024 WL 1319725 at *11 (S.D. Cal. Mar. 27, 2024) ("Plaintiffs cannot just say Heavy Metals can be unhealthy and these Products contain some level of Heavy Metals. They have to connect the health risks alleged to the levels of Heavy Metals in these Products and they have to be significant enough to be unfit for

---

[10] *Wallace v. SharkNinja Operating, LLC*, Case No. 18-cv-05221, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020).

[11] *Johnson v. Glock, Inc.*, Case No. 3:20-cv-08807, 2021 WL 428635 (N.D. Cal. Feb. 8, 2021).

MOTION TO DISMISS & MEMO OF P's & A's IN SUPPORT

human consumption or an unreasonable safety hazard."); *Rodriguez v. Mondelez Global LLC*, Case No. 23-cv-00057, 2023 WL 8115773 at *10 (S.D. Cal. Nov. 22, 2023) (allegations of lead in chocolate suggested a safety hazard, but not "that the safety hazard was *unreasonable*") (emphasis in original); *Grausz*, 2024 WL 312688 at *5 (court agreed that plaintiff had "fail[ed] to plead whether the trace amounts *at issue here* are actually enough to cause [negative] health effects[.]") (internal quotations omitted) (emphasis in original).

The Court should reach the same conclusion here, where Plaintiffs have failed to plead that the purported safety hazard of addictiveness is unreasonable such that Defendant had a duty to disclose. To be sure, as Plaintiffs allege, Defendant's product, when administered, alleviates opiate withdrawal and whereas its alleged addictiveness is highly dose dependent.[12] Indeed, Plaintiffs expressly acknowledge the lack of inherent danger by alleging that kratom has "variable but not debilitating effects." *Id.* at ¶ 18. That is, it is not – even according to Plaintiffs' allegations – *inherently* dangerous. Plaintiffs' allegations are simply too internally contradictory to permit the Court to conclude that Plaintiffs have alleged that Defendant's products create an unreasonable safety hazard. *See, e.g.*, *Browning v. Unilever United States, Inc.*, Case No. SACV 16-02210, 2018 WL 6615064 at *3 (C.D. Cal. Dec. 17, 2018) ("Plaintiffs must show a sufficiently close nexus between the claimed defect and the alleged safety issue.") (internal quotations omitted).

In sum, while the Complaint suggests a *potential* for addiction in some circumstances, for some individuals based on some dosages, it falls short in establishing that such risks are an inherently unreasonable safety hazard that compel Defendant to disclose additional information about its specific products.

---

[12] *See* Compl. ¶ 18 ("pharmacological effects" of kratom are "highly does-dependent," and "its effects are . . . substantially similar to opiate based painkillers . . . *in sufficient doses*") (emphasis added); *see id.* at ¶ 26 ("[W]hen administered, kratom alleviates opioid withdrawal symptoms[.]").

MOTION TO DISMISS & MEMO OF P's & A's IN SUPPORT

*See, e.g.*, *Balistreri v. McCormick & Co., Inc.*, No. 5:22-CV-00349-EJD, 2023 WL 5988600 at *11 (N.D. Cal. Sept. 13, 2023) ("Plaintiffs' assertion that any product containing Heavy Metals is unsafe for human consumption [is] a conclusory statement"); *In re Trader Joe's Co. Dark Chocolate Litig.*, 2024 WL 1319725 at *11 ("[A]lleging that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in these Products pose a human health risk, particularly not one great enough to constitute an unreasonable safety hazard or make them unfit for human consumption."). Plaintiffs' claims fail to "describe more than merely conjectural and hypothetical injuries," *Grausz*, 2024 WL 312688 at *4, and accordingly cannot satisfy the unreasonable safety hazard test.

### 2. Defendant has complied with any applicable duty to disclose.

Alternatively, even assuming Defendant had a duty to disclose additional information under one of the foregoing tests, the Court should still dismiss Plaintiffs' UCL, CLRA, and FAL claims on the ground that Defendant satisfied its duty to disclose.

As detailed above, Defendant's product packages explicitly state that the FDA "has not yet approved this product for human consumption." Compl. ¶¶ 64, 66. Defendant's website is even more explicit, noting that "the FDA has 'warned against the dangers of consuming kratom and [how] there are no safe guidelines for use as a dietary supplement[.]'" *Id.* at ¶ 49. And, as particularly relevant to Plaintiffs—who allegedly sought out Defendant's products to treat an alcohol addiction, anxiety, and withdrawal symptoms relating to other substances, *see id.* at ¶¶ 81, 84—Defendant's packages warn that its products are "not intended to diagnose, treat, cure, or prevent any disease." *Id.* at ¶¶ 64, 66.

Such statements adequately put reasonable consumers on notice of potential risks associated with taking kratom. *See, e.g.*, *Brown v. Madison Reed, Inc.*, 622 F.Supp.3d 786, 805 (N.D. Cal. 2022) ("Although [plaintiffs] have plausibly

pleaded that the replacement chemicals pose a safety hazard, imposing upon [defendant] a duty to disclose, [defendant] *did* disclose that its products contained ethanolamine, 2-methylresorcinol, and PTDS. . . . The ingredient list included on the box of products and on the website state them.") (emphasis in original). Because Defendant's warnings consumers on notice of the alleged risks of kratom, the Court should dismiss Plaintiffs' first three causes of action on this basis as well.

### 3. Defendant's alleged omissions do not violate the unfairness prong of the UCL.

As noted above, while the foregoing analysis applies to Plaintiffs' CRLA claim, FAL claim, and the unlawful or fraudulent prongs of the UCL claim, some courts use different tests to examine whether alleged omissions violate the unfairness prong of the UCL. *See,* note 7*, supra; see e.g.*, *Hodsdon*, 891 F.3d at 865–66 ("Unlike the other two UCL prongs, the lack of a duty to disclose does not necessarily dispose of claims under the unfair prong.").[13]

> The Ninth Circuit has acknowledged that at least three of the tests can be used to determine what an "unfair" business practice is. As such, an "unfair" business practice is one where either: (1) the challenged conduct is tethered to [a] violation of any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law (the "Tethering Test"); (2) the challenged conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers (the "Immoral Test"); or (3) the challenged conduct's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer (the "Balancing Test").

*Epperson v. Gen. Motors, LLC*, No. 3:23-CV-01554, 2023 WL 8628327 at *6 (S.D. Cal. Dec. 13, 2023) (internal quotations omitted).[14]

---

[13] That said, while a different analysis may be involved, "[g]enerally, where conduct that comprises the UCL fraudulent or unlawful prongs is the same conduct as the unfair prong, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *In re Plum Baby Food Litig.*, 2024 WL 1354447 at *7 (internal quotations omitted).

[14] There is some language in the Complaint that suggests Plaintiffs may be attempting to plead unfairness based on an outdated fourth test known as the "FTC test." But "the Ninth Circuit [has] explicitly rejected the applicability of the FTC Test to consumer cases like this." *Epperson*, 2023 Wl 8628327 at *6.

Each test warrants dismissal.. First, Plaintiffs "tether" their unfair UCL claims to alleged violations of the CLRA. *See* Compl. ¶ 102. Plaintiffs have not pled any other constitutional provision, statute, regulation, or antitrust law that supports their unfairness allegations. Thus, under the tethering test, Plaintiffs' CLRA and UCL rise and fall together. Because Plaintiffs' CLRA claim fails for the reasons stated above, Plaintiffs' UCL claim likewise fails.

Plaintiffs' UCL claims also fail under the immoral test because, as the Ninth Circuit has noted, Defendant's "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867.[15]

Finally, Plaintiff's UCL claim fails under the balancing test because the Complaint does not articulate how any "impact" on the Plaintiffs is outweighed by Defendant's "reasons, justifications and motives." That is, the Complaint is internally inconsistent regarding the benefits of kratom. *Compare* Compl. ¶ 104 ("Indeed, no benefit to consumers or competition results from Defendant's conduct.) *with id.* at ¶¶ 12–13, 18–20, 26, 33 (acknowledging kratom's widespread use, that it has "variable but not debilitating effects," that it may operate as a painkiller in sufficient doses, that it has "mood-lifting and stimulant-like effects," and that it may "alleviate[] opioid withdrawal symptoms."). Such contradictory allegations are clearly insufficient to satisfy this test. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) ("As to the balancing test, Does assert in a conclusory fashion that CVS's conduct 'outweighs any justification, motive or reason therefor,' but they do not allege how that is so.").[16] The Court should

---

[15] Similarly, while Plaintiffs repeatedly complain that Defendant has profited from the sale of its products, *see e.g.* Compl. ¶ 47, "profit motive is not enough to show immoral, unethical, oppressive, unscrupulous or substantially injurious conduct." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020).

[16] Additionally, as with the preceding section, even assuming there could be something unfair about the addictiveness of Defendant's products, Defendant's warnings on its product labels and websites—as well as widespread knowledge about kratom, *see* Compl. ¶¶ 13, 40, 59–60—eliminate any such unfairness. *See,*

-20-

therefore dismiss Plaintiffs' CLRA, FAL, and UCL claims—including under the unfairness prong—in their entirety.

## II.   PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL.

Plaintiffs allege that Defendant's "Products do not conform to the implied affirmations of fact made on the marketing and packaging for the Products that the Products are not addictive and do not cause withdrawals. U.C.C.§§ 2-313(2)(a), (e), (f)." Compl. ¶ 132–33.[17]

None of the three subsections identified here—§2314(2)(a), (e), or (f)—have been satisfactorily pleaded, and Plaintiffs' fourth cause of action should therefore be dismissed as well.

Subsection (a) states, "Goods to be merchantable must be at least such as (a) Pass without objection in the trade under the contract description[.]" Cal. Com. Code § 2314(2)(a). "In analyzing the 'passing without objection in the trade' requirement, crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade." *Grausz*, 2024 Wl 312688 at *8. Here, Plaintiffs have alleged how Defendant's products compare to kratom products from other companies. Plaintiffs therefore cannot state a claim under Subsection (a).

Subsection (e) requires that Defendant's products be "adequately contained, packaged, and labeled as the agreement may require," while Subsection (f) requires that Defendant's products "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(e)–(f). The analysis as to whether Defendant violated these provisions is identical to the analysis

---

*e.g.*, *In re Plum Baby Food Litig.*, 2024 WL 1354447 at *7 (no unfairness under the balancing test where both the defendant and the media had "publicized the risks" of the defendant's products).

[17] Plaintiffs evidently intended to cite to UCC § 2-314, not § 2-313, as the former addresses implied warranties, while the latter addresses express warranties. Additionally, this provision has been enacted by California as Cal. Com. Code § 2314.

undertaken above with respect to Plaintiffs' UCL, CLRA, and FAL claims. *See, e.g.*, *Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 932–33 (N.D. Cal. 2014) (applying identical analysis to UCL, FAL, and CLRA claims and implied warranty claims); *Sugawara v. Pepsico, Inc.*, Case No. 2:08-cv-01335, 2009 WL 1439115 at **2–5 (E.D. Cal. May 21, 2009) (same). For the reasons detailed above in Section I, Defendant's packaging was adequate—meaning it contained all of the information the law requires of it—and the statements thereon were all true. Accordingly, Plaintiffs have not pleaded that Defendant's products were inadequately labeled or otherwise do not conform to the statements made on the packaging. Plaintiffs' fourth cause of action should therefore be dismissed.

## III.   **PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.**

Plaintiffs' claim for unjust enrichment exclusively seeks equitable relief. And like with the analysis detailed above, *see* Section I(A), Plaintiffs may only seek unjust enrichment if they first plead that no remedy at law could adequately make them whole. *See, e.g.*, *Zapata Fonseca v. Goya Foods Inc*., No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) ("[U]njust enrichment applies only in the absence of an adequate remedy at law.") (internal quotations omitted); *Grausz*, 2024 WL 312688 at *7. Plaintiffs have failed to do that here. Indeed, Plaintiffs' justification for seeking unjust enrichment is identical to their justification for seeking equitable relief under the UCL. *Compare* Compl. ¶ 106 *with id.* at ¶ 148. The Court should therefore dismiss Plaintiffs' unjust enrichment claim.

Alternatively, the Court should dismiss Plaintiffs' unjust enrichment claim because it suffers from the same defects as Plaintiffs' other causes of action.

> A plaintiff must adequately allege that the defendant received and unjustly retained a benefit at the plaintiff's expense. Under California law, it must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust."

-22-

1    *Regents of Univ. of Cal. v. LTI Flexible Prods., Inc.*, Case No. 3:20-cv-08686,

2    2021 WL 4133869 at *10 (N.D. Cal. Sept. 10, 2021) (internal quotations omitted).

3        Plaintiffs' sole allegation in support of this claim is that Defendant's

4    retention of benefits from Plaintiffs was unjust "because Defendant omitted that

5    the Products were addictive and similar to opioids." Compl. ¶ 143. Accordingly,

6    Plaintiffs have not alleged enrichment due to mistake, coercion, or request; their

7    claim is instead rooted in a fraud-by-omission theory. And for all of the reasons

8    detailed above, *see* Section I(C), that claim has not been adequately pled.

9    **IV.    PLAINTIFFS' FRAUD BY OMISSION AND NEGLIGENT**
     **MISREPRESENTATION CLAIMS FAIL.**
10

11        Plaintiffs' sixth and seventh claims for fraud by omission and negligent

12    misrepresentation, respectively, both relate exclusively to Defendant's alleged

13    failure to disclose that kratom is addictive. *See* Compl. ¶ 153 ("Defendant

14    misrepresented that its kratom Products have attributes or qualities that they do not

15    have by failing to disclose that kratom is addictive and can cause opioid-like

16    withdrawal"); ¶ 163 (same).

17        With respect to the negligent misrepresentation claim, this is improper: "[A]

18    negligent misrepresentation claim under California law requires an affirmative

19    representation and cannot be based on nondisclosures[.]" *Cheramie v. HBB, LLC*,

20    545 F. App'x 626, 628 (9th Cir. 2013); *see also Nevada Fleet LLC v. FedEx Corp.*,

21    Case No. 17-cv-01732, 2024 WL 199626 at *10 (E.D. Cal. Jan. 18, 2024) (same).

22    Plaintiffs' seventh cause of action should therefore be dismissed for failure to

23    plead an affirmative misrepresentation.

24        In any event, the allegations in these two causes of action do not

25    substantially differ from the allegations addressed above as part of Plaintiffs' UCL,

26    FAL, and CLRA claims. A fraud by omission claim, like the consumer protection

27    claims, requires analyzing the *LiMandri* factors to determine whether a duty to

28    disclose exists. *See LiMandri*, 52 Cal.App.4th at 336. Because Plaintiffs have not

pled any of these factors, *see* Section I(C)(1)(i), Plaintiffs' fraud-based claims should also be dismissed.[18]

## CONCLUSION

For all of the reasons stated above, Defendant respectfully requests that the Court dismiss Plaintiffs' complaint in its entirety.

Dated:  April 10, 2024.                    PARSONS BEHLE & LATIMER

                                        */s/ Nathan D. Thomas*
                                   By: ─────────────────────────
                                        Erik C. Christiansen
                                        Nathan D. Thomas
                                        Elizabeth M. Butler
                                        Attorneys for Defendant

───────────────────────

[18] The non-*LiMandri* tests analyzed above—whether a defect is central to a product's functionality, whether a defect presents an unreasonable safety hazard, and (for unfairness) the tether, immoral, and balancing tests—do not appear to apply to common-law fraud claims. *See, e.g., Torres v. Botanic Tonics, LLC*, Case No. 23-cv-01460, 2023 WL 8852754 at *3 (N.D. Cal. Dec. 21, 2023) (holding that these alternative tests are appropriate in the consumer protection context because "the California Legislature intended the unfair-practices prong of the UCL to reach beyond existing law"); *Nevada Fleet*, 2024 WL 199626 at *10 n.8 (it is "unclear" whether the central function test applied outside the context of consumer protection claims).

-24-

1

# <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on this 10th day of April, 2024, I caused a true and

3

correct copy of the foregoing **MOTION TO DISMISS** to be served by the method

4

indicated below, to the following:

5

BURSOR & FISHER, P.A.                ☒   Electronic Filing Notification

6

Neal J. Deckant (State Bar No. 322946)    ☐   U.S. Mail, Postage Prepaid
Luke Sironski-White (State Bar No.        ☐   Hand Delivered

7

348441)                                   ☐   Overnight Mail
1990 North California Blvd., Suite 940     ☐   Facsimile

8

Walnut Creek, CA 94596                    ☐   Email

9

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

10

Email: ndeckant@bursor.com
isironski@bursor.com

11

12

Dated:  April 10, 2024              PARSONS BEHLE & LATIMER

13

14

                                        /s/ Nathan D. Thomas
                                By:   Erik C. Christiansen

15

                                      Nathan D. Thomas
                                      Elizabeth M. Butler

16

                                      Attorneys for Defendant

17

18

19

20

21

22

23

24

25

26

27

28