UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.D. and L.M., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIT45, INC.,<br><br>Defendant. | Case No.:  3:24-cv-0499-L-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>[ECF No. 5] |

Pending before the court in this putative class action is Defendant MIT45, Inc.'s ("Defendant" or "MIT45") motion to dismiss the complaint for failure to state a claim. (ECF No. 5.)  Plaintiffs B.D. and L.M. (together, "Plaintiffs") collectively opposed, (ECF No. 6), and MIT45 replied, (ECF No. 8).  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The Court decides the matters on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d.1).  For the reasons stated below, the motion to dismiss is granted in part and denied in part, with leave to amend.

I.  **BACKGROUND**[1]

Plaintiffs bring this putative class action against MIT45, on behalf of themselves and all similarly situated, for the "false, misleading, deceptive, and negligent sales practices regarding its kratom powder, capsule, gummy, and liquid extract products." (ECF No. 1 at 2.)

According to Plaintiffs, MIT 45 sells extracts and other products made of kratom, "a type of plant indigenous to Southeast Asia which can produce psychoactive effects when ingested." (*Id*.)  Plaintiffs allege that what reasonable consumers do not know about kratom is that the active ingredients in kratom "are similar to opioids" and "kratom works on the exact same opioid receptors in the human brain as morphine and its analogs, has similar effects as such, and critically, has the same risk of physical addiction and dependency, with similar withdrawal symptoms." (*Id*.) "Kratom is perniciously addictive – on a whole different level than caffeine or nicotine – and it has sunk its hooks into tens of thousands of unsuspecting consumers and caused them serious physical, psychological, and financial harm." (*Id*.)

Kratom is "derived from the kratom plant, *mitragyna speciosa*, indigenous to Southeast Asia, where it has been used in herbal medicine since at least the early 19th Century," especially throughout "Thailand, Indonesia, and Malaysia." (*Id*. at 5.)  Kratom contains chemicals called "alkaloids" that "produce a psychoactive effect when ingested."  The alkaloids in kratom are Mitragynine[2] ("MG") and 7-hydroxymitragynine ("7-MG").  These alkaloids provide a variety of pharmacological effects depending on the dose, where "a low dose (0.5 grams to 3 grams) of kratom is typically described as

---

[1] Unless otherwise noted, all facts are taken from the complaint. On a motion to dismiss for failure to state a claim, all allegations of "material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996); *see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

2

stimulating or energizing," and a "high dose (3+ grams) is described as euphoric, sedating, and analgesic." *Id.*

While not providing an "overwhelming" high, kratom's effects are "substantially similar to opiate-based painkillers such as hydrocodone and oxycodone in sufficient dosages." (*Id.* at 6.) Kratom interacts with "many different receptors in the brain" including the "mu-opioid receptor" which is "known as 'the gateway to addiction' because it is the receptor which all opiates/opioids interact with to produce the classic opiate high: euphoric, sedating, and analgesic." (*Id.*) The alkaloids in kratom "were found to be more potent to the mu-opioid receptor than morphine via oral administration." (*Id.*)

Kratom carries a "very high risk of addiction." (*Id.* at 7.) "Opioids [such as kratom] are addictive not just because of the pleasurable effects that they produce, but because sudden cessation of opioid use causes severe withdrawal symptoms, which users feel compelled to avoid by taking more of the drug." (*Id.*) Withdrawal from kratom can cause symptoms similar to those of traditional withdrawal, including "irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, and extreme dysphoria and malaise." (*Id.*)

Kratom use in the United States "has exploded over the past decade" and now it is estimated that it is a "1.3 billion dollar a year industry, with 11 million to 15 million annual users in the United States," however, kratom is still a "relatively unknown drug to the average consumer." (*Id.* at 8.)

MIT45 is the producer of a variety of kratom based products, including powder, capsule, gummy, and liquid extract products (the "Products"). (*Id.* at 2.) MIT45 "specializes in kratom extracts," which MIT45 themselves warns "can be much more powerful than whole leaf Kratom powder." (*Id.* at 15.) Plaintiffs allege that "MIT45 emphasizes the safety of its Products as measured by their 'purity.'" (*Id.* at 14.)

Plaintiffs allege that MIT45 knew or should have known they were selling a highly addictive product to unsuspecting customers due to the extensive and well-documented history of kratom dependence, especially in Southeast Asia.  (*Id*. at 13.)  However, "Defendant makes no mention of its Products' addictive nature on its website nor on its Products' packaging." (Id. at 14.)  On certain products, Defendant provides a "Caution" label, which states that "Mitragyna Speciosa Extract can be much more powerful than whole leaf Kratom powder. Read above table." (*Id*. at 14-15.)  While the table provides how much of each alkaloid is in each serving, Plaintiffs allege this "provides absolutely no useful information to consumers, who do not know how much an arbitrary amount of relatively-unknown alkaloids will affect them." (*Id.* at 15.)  Some of MIT45's products are "extracts," which Plaintiffs allege the purpose of are "to create a vastly more potent product as there is a greater concentration of MG and 7-MG, and all other alkaloids, by weight compared to regular powder kratom." (*Id*.)  These extracts "produce[] greater euphoria and 'feel good' effects at first, but only leads to deeper addiction down the road." (*Id*.)

Plaintiffs allege that "Defendant intentionally and negligently failed to disclose these material facts [of the addictiveness of kratom] anywhere on its labeling, packaging, or marketing materials, and it has violated warranty law and state consumer protection laws in the process."  MIT45 uses the kratom products' "innocuous packaging" and the "public's limited knowledge" to "get users addicted" in order to "reap[] profits." (*Id*. at 2.)  Plaintiffs further allege that "Defendant has engaged in a systemic effort to peddle an addictive substance to unsuspecting and oftentimes vulnerable consumers." (*Id*. at 3.)  On MIT45's website, "there is no mention at all of the potential for addiction when using kratom or Defendant's kratom Products." (*Id*. at 16.)  Furthermore, Plaintiffs allege that the product labels are even more insufficient, and that the labels only contain a "bog-standard disclaimer stating that the Product is not intended to diagnose, treat, cure or prevent any disease, and that the manufacturer is not 'responsible for the misuse or

4

misrepresentation of it's [sic] products.'" (*Id*. at 18.) Because of this packaging, Plaintiffs allege that "[r]easonable consumers looking at the Products' packaging would not presume that kratom is highly addictive or that daily use would be inappropriate and lead to potential addiction to the Product." (*Id*. at 19.)

Plaintiffs are citizens of California "who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom, which operates like an opioid, and became addicted as a result."[2] (*Id*. at 4.) Plaintiff B.D. first heard about kratom "through a smokeshop owner," when he was looking to help get clean from alcohol and deal with anxiety. (*Id* at 21-22.) When he purchased the products, he "reviewed the MIT45 Gold Extract bottle's packaging and labels, but there were no disclosures on the package that would have corrected his misunderstanding about the Product's addictive potential." (*Id*. at 22.) B.D. began "requiring larger and larger doses," moving from the weakest "Gold," then moving to the "Blue Super K," and finally ending with the "Purple Super K Extra Strength," which contains "360mg of mitragynine, equivalent to about 36 grams of raw kratom leaf." When Plaintiff tried to quit using the products, he suffered "intense physical and psychological withdrawal symptoms that were substantially similar to traditional opiate withdrawals – with symptoms including profound anxiety, deep headaches, severe gastrointestinal distress, and fatigue." (*Id*.) If "B.D. [had] known that kratom was so addictive, and that cessation would be so difficult, he would never have purchased the Products." (*Id*.)

Plaintiff L.M. "heard about kratom through a friend, who told him it would help alleviate withdrawal from other substances without being addictive itself." (*Id*. at 23.) "When L.M. made his first purchase, he reviewed the MIT45 packaging and labels, but there were no disclosures on the package that would have corrected his misunderstanding

---

[2] Because this action concerns issues of addiction and medical status, Plaintiffs are filing under their initials for the sake of their personal privacy. (ECF No. 1 at 3.)

about the Product's addictive potential." (*Id*.)  About eight months into L.M.'s use of kratom, he discovered that it was addictive and "found himself requiring larger and larger doses to stave off withdrawal." (*Id*.)  When he tried to cease using the Products, he was "wracked by intense physical and psychological withdrawal symptoms that were substantially similar to traditional opiates – with symptoms including manic episodes, restlessness, irritability, and severe gastrointestinal distress." (*Id*.)

Plaintiffs now seek to represent all consumers similar situated, defined as "[a]ll persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased MIT45 kratom products" (the "Class").  (*Id*. at 24.)  Further, they seek to represent a California subclass of these consumers (the "California Subclass").  (*Id*.)  Plaintiffs bring claims for: (1) Violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (2) Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"); (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL"); (4) Breach of Implied Warranty; (5) Unjust Enrichment; (6) Fraud by Omission; and (7) Negligent Misrepresentation.  (*Id*. at 26-36.)

**II.     LEGAL STANDARDS**

A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[3]  A pleading must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Therefore, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than "a formulaic

---

[3] Unless stated otherwise, internal ellipses, brackets, citations, and quotation marks are omitted from citations.

recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill*, 80 F.3d at 337–38. However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In addition to meeting the pleading demands of Rule 8(a), Rule 9(b) requires a plaintiff bringing a claim grounded in fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). The allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). This is accomplished by describing the "who, what, when, where, and how" of the charged misconduct. *Vess*, 317 F.3d at 1106. While "mere conclusory allegations of fraud are insufficient," *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b).

### III.   DISCUSSION

MIT45 argues that the Complaint should be dismissed in its entirety on a variety of theories. The Court addresses each argument in turn.

### A. Equitable Relief

MIT45 moves to dismiss Plaintiffs' claims to the extent they seek equitable relief, arguing that Plaintiffs fail to allege inadequacy of legal remedies. (ECF No. 5 at 12.) MIT45 argues Plaintiffs' claims under the UCL and FAL are equitable claims and provide only equitable relief, and therefore should be dismissed in their entirety on this basis. (*Id*.) MIT45 argues Plaintiffs' claim under the CLRA provides for both legal remedies and equitable remedies, and that Plaintiffs' claim for equitable remedies under the CLRA should be dismissed. (*Id*. at 14.)

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. U.S.*, 569 F.3d 956, 963 (9th Cir. 2009). A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

The Court finds that Plaintiffs have adequately alleged they lack an adequate remedy at law in the alternative. MIT45's reliance on *Sonner* to refute Plaintiffs' alternative pleading is unavailing. In *Sonner*, the Plaintiff voluntarily dismissed her CLRA claim for damages in order to avoid the jury and seek the same amount as restitution at bench trial. *Id*. at 837-38. The resulting amended complaint, seeking only equitable relief, was dismissed because the plaintiff could not show that damages were unavailable to her. *Id.* at 838, 844. Here, at the pleading stage, the Plaintiff can plead conflicting theories in the alternative under Fed. R. Civ. P. 8(a)(3). *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015). While Plaintiffs must ultimately prove that legal remedies are inadequate in order to succeed on an equitable claim, at this stage it is sufficient that they have pled in the alternative that adequate legal damages may not exist. Accordingly, the Court DENIES MIT45's motion on this basis.

**B. Omissions for the UCL, FAL, CLRA Claims**

MIT45 moves to dismiss Plaintiffs' UCL, FAL, and CLRA claims on the basis that MIT45 had no duty to disclose any additional information about its products, and that even assuming they did have a duty to disclose information, MIT45's warnings and disclaimers satisfied that duty. Plaintiff argues that MIT45 had a duty to disclose the Product's addictiveness, and that their disclaimers and warnings were inadequate to meet this duty.

For an omission to be actionable under the UCL, FAL, or CLRA, the omission must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."[4] *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). Courts have repeatedly noted the "general disarray" concerning when a defendant has a duty to disclose. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101 (N.D. Cal. 2021). A least two different tests are used by California courts and federal courts applying California law. The first test states that a defendant has a duty to disclose when at least one of the following factors (the "*LiMandri* factors") is met: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact. *LiMandri v. Judkins,* 52 Cal.App.4th 326, 337, 60 Cal.Rptr.2d 539 (Cal. Ct. App. 1997). The second test requires that the Plaintiff allege

---

[4] The UCL, FAL, and CLRA all have distinct requirements, however, as Plaintiffs' omissions theory overlaps for all three claims, and MIT45 argues that the claims rise or fall together, the Court considers them in tandem. *See Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345-DMS-AGS, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) ("Consumer protection claims under the CLRA, FAL and UCL are often analyzed together because they share similar attributes.").

at least one of the four *LiMandri* factors, and that "(1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function.'" *Hammerling*, 615 F. Supp. 3d at 1085 (*quoting In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1101–02. The Ninth Circuit has appeared to endorse the second test, and so this Court will follow that approach. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018).

Plaintiffs sufficiently allege that MIT45 had exclusive knowledge of material facts not known to Plaintiffs as to the addictiveness of the Products, satisfying the second *LiMandri* factor. *See LiMandri*, 52 Cal.App.4th at 337. Plaintiffs allege consumers are unaware of the addictive qualities of the Products, and that "users are not aware that it is similar to an opioid with opioid addiction potential." (ECF No. 1 at 8.) This is partly because "it is often marketed as a safe substitute for painkillers and appeals to those who equate 'natural' with 'safe;' [and] it has received attention from the media as a 'nootropic' or 'smart' drug because it is stimulating at low doses." (*Id.*) Further, they allege "[b]ecause manufacturers and advertisers of kratom, such as MIT45, do not disclose the addictive potential of this drug, many users have found themselves blindsided when they wake up one morning in the throes of withdrawal after having stopped using what they thought was an innocuous supplement." (*Id.* at 9.) Plaintiffs allege that the reasonable consumer was unable to find information on the addictiveness of the Products, such as one user who reported that, "I researched kratom before using it and almost every site promoted that its harmless with healthy benefits … Information wasn't clear that kratom could become a negative addiction that takes months to recover." (*Id.* at 9.)

While consumers were unaware of the addictiveness of the Products, Plaintiffs adequately allege that MIT45 had information of the addictiveness of the Products. Plaintiffs allege that "Defendant specializes in kratom extracts" and advertise that "MIT45 is one of the country's premier providers of kratom, featuring the finest lineup of

products available on the market today." (*Id*. at 14.)  MIT45 maintains pride in the "purity" of their products and create extracts that are "much more powerful than whole leaf Kratom powder." (*Id*. at 14-15.)  Plaintiffs argue that due to MIT45's expertise in the kratom products, it "must be aware of the interaction between MG and 7-MG (the two primary alkaloids in kratom) and the mu-opioid receptor." (*Id*. at 14.)  Accordingly, "Defendant therefore knew or should have known that the Products it was selling were highly addictive." (*Id*. at 16.)

MIT45 argues that Plaintiffs own complaint shows that they were not in control of exclusive information about the addictiveness of the Products.  Indeed, the complaint alleges that "[i]t has been known for decades in the English-speaking world that kratom is highly addictive and has the potential to cause physical and psychological dependence in regular users," and that "[t]he addictiveness of kratom has been well-documented for decades and is an established fact in medical literature." (*Id*. at 17.)  However, Plaintiffs' allegations about the medical consensus on the addictiveness of kratom products do not defeat their claim of exclusive possession of knowledge by MIT45.  Exclusive knowledge is not defined "literally," but rather claims are cognizable "if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only...limited publicly available information about the defect." *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-08629 FMO, 2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016).  That some problems are known with a product does not necessarily establish that that Plaintiffs knew or should have known the severity of the issue.  Plaintiffs allege that MIT45's Products are "highly concentrated forms of kratom," and that consumers taking them do not know "just how addictive the extracts, in particular, can be." (ECF No. 1 at 16.)  While knowledge of the addictiveness of the raw form of kratom may be readily available, MIT45 sells much more concentrated Products that Plaintiffs allege are highly addictive.  As such, Plaintiffs adequately alleged that users reasonably believe that

the Products are not addictive, and that MIT45 is in exclusive control of information stating otherwise.[5]

Plaintiffs also adequately allege that the Products bore an unreasonable safety risk. "Where a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). However, the alleged "unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries." *Id.* at 1028 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)). Plaintiffs allege that "Kratom is perniciously addictive – on a whole different level than caffeine or nicotine – and it has sunk its hooks into tens of thousands of unsuspecting consumers and caused them serious physical, psychological, and financial harm." (*Id.* at 2.) They allege that "[t]he symptoms of kratom withdrawal are very similar to those of traditional opiate withdrawal. Such symptoms include: irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, and extreme dysphoria and malaise." (*Id.* at 7.) Plaintiff argues that "[t]he modern medical view is that addiction is a *disease*, not a 'moral failure' or a sign of weakness; as such, the potential to cause a disease is necessarily an unreasonable safety hazard about which consumers should have been informed." (ECF No. 6 at 13.)

Plaintiffs themselves suffered from the product, with one experiencing symptoms of "profound anxiety, deep headaches, severe gastrointestinal distress, and fatigue" and being unable to stop taking the Products even though they have been trying to. (ECF No. 6 at 22.) Plaintiffs' allegations are sufficient to show an unreasonable safety risk due to the addictiveness of the products.

---

[5] As Plaintiffs sufficiently allege the second *LiMandri* factor, the Court need not consider if they also sufficiently allege the fourth *LiMandri* factor.

MIT45 argues that even if they had a duty to disclose, their disclaimers and warnings were sufficient to meet this duty.  (ECF No. 5 at 25.)  MIT45's product packages state that the FDA "has not yet approved this product for human consumption," and their website notes that "the FDA has 'warned against the dangers of consuming kratom and [how] there are no safe guidelines for use as a dietary supplement[.]'"  (ECF No. 1 at 14, 18.)  Further, MIT45's packages warn that its products are "not intended to diagnose, treat, cure, or prevent any disease."  (*Id.*)  These warnings are insufficient to comply with a duty to disclose the alleged risk of addictiveness of the Products.  Plaintiffs' claim is not that MIT45 had a duty to disclose that the Products were not FDA approved, or that there are not safe guidelines for use of the product as a dietary supplement.  Rather, Plaintiffs' omission claim is that the Products are dangerously addictive.  Nothing in Defendant's disclaimers and warnings address this fact.

Accordingly, MIT45's motion to dismiss Plaintiffs' UCL, FAL, and CLRA claims for failure to plead an actionable omission is DENIED.[6]

**C. Implied Warranty**

Plaintiffs bring a claim for a violation of the implied warranty of the Products under Cal. Com. Code § 2314(2)(a), (e), and (f).  MIT45 concedes that "the analysis as to whether Defendant violated these provisions is identical to the analysis undertaken above with respect to Plaintiffs' UCL, CLRA, and FAL claims."  (ECF No. 5 at 21-22 (*citing Hendricks v. StarKist Co.*, 30 F.Supp. 3d 917, 932–33 (N.D. Cal. 2014).)  As this Court

---

[6] Defendants also argue that Plaintiffs fail to allege that Defendant made affirmative misrepresentations for their UCL, FAL, and CLRA claims.  As the Court determines that Plaintiffs state a claim based on omissions, the Court does not reach the question of if Plaintiffs also have a cognizable claim for UCL, FAL, and CLRA claims under a misrepresentation theory.  *See Franklin v. Midwest Recovery Sys., LLC*, 18-CV-02085-JLS, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim."); *accord BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.").

holds that Plaintiffs have sufficiently stated a claim under the California consumer protection statutes, *see* **Section III.B**, Plaintiffs have also stated a claim for violation of the Product's implied warranty.  Accordingly, MIT45's motion to dismiss Plaintiffs' implied warranty claim is DENIED.

### D. Unjust Enrichment

MIT45 seeks to dismiss Plaintiffs' unjust enrichment claim for seeking equitable relief, and because "it suffers from the same defects as Plaintiffs' other causes of action." Plaintiffs have adequately plead that they lack an inadequate remedy at law in the alternative, *see* **Section III.A.**, and that MIT45 omitted information they had a duty to disclose, *see* **Section III.B.**  Accordingly, MIT45's motion to dismiss Plaintiffs' unjust enrichment claim is DENIED.

### E. Fraud by Omission

MIT45 moves to dismiss the fraud by omission claim, arguing that Plaintiffs failed to sufficiently allege a duty to disclose under the *LiMandri* factors.  As this Court holds that Plaintiffs have sufficiently stated a duty to disclose, *see* **Section III.B**, MIT45's motion to dismiss Plaintiffs' fraud by omission claim is DENIED.

### F.  Negligent Misrepresentation

Defendant moves to dismiss the negligent misrepresentation claim on the grounds that Plaintiff failed to plead an affirmative misrepresentation.  "A negligent misrepresentation claim 'requires a positive assertion,' not merely an omission. *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011), *see also Cheramie v. HBB, LLC*, 545 F. App'x 626, 628 (9th Cir. 2013) (same).  Plaintiffs allege that "Defendant misrepresented that its kratom Products have attributes or qualities that they do not have by **failing to disclose** that kratom is addictive and can cause opioid-like withdrawal." (ECF No. 1 at 34 (emphasis added).)  This assertion of an omission is insufficient to state a claim for negligent misrepresentation.  *See Lopez*, 201 Cal. App. 4th at 596.

Accordingly, MIT45's motion to dismiss Plaintiffs' negligent misrepresentation claim is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, MIT45's motion to dismiss is **GRANTED** in part and **DENIED** in part. MIT45's motion is denied as to Counts I through IV. MIT45's motion is granted as to Count VII (negligent misrepresentation). Leave to amend is granted. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts."). Plaintiffs may file an amended complaint, if at all, no later than July 19, 2024.

**IT IS SO ORDERED.**

Dated: July 3, 2024

_____
Hon. M. James Lorenz
United States District Judge